IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JOEY KENNETH PRIDDY,** | ) | CASE NO. 7:12CV00017 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | |
| | ) | |
| | ) | |
| **JOHN GARMAN, ET AL.,** | ) | By:  Glen E. Conrad |
| | ) | Chief United States District Judge |
| **Defendant(s).** | ) | |

Joey Kenneth Priddy ("Priddy"), a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendant prison officials are violating his constitutional rights by allowing Muslim inmates to conduct group prayers in the common areas of Bland Correctional Center ("Bland").  As relief in this action, Priddy seeks preliminary and permanent injunctive relief.[1]  Finding no respect in which the challenged prison practices are depriving Priddy of constitutional rights, the court summarily dismisses Priddy's complaint.

**I**

Priddy offers the following allegations in support of his § 1983 claims.  A Virginia Department of Corrections ("VDOC") policy prohibits "formal religious activities in common areas such as T.V. rooms and recreation and work areas without supervision" and requires prison officials to designate appropriate space and supervision for such functions.  Listed examples of "formal religious activities" include prayers, rituals, ceremonies, celebrations, study groups, and meetings.  The policy permits religious activities in inmate common areas only if they are informal and not disruptive to other prisoners authorized to use the same area.

---

[1] The court conditionally filed Priddy's civil action and took under advisement his motion for preliminary injunctive relief to require him to consent to payment of the filing fee.  He has now done so.

Priddy asserts that the defendant officials have violated the religious activities policy by allowing Muslim inmates to conduct daily prayer services in common leisure and work areas at Bland.[2]  Priddy reports that for over a year, he has

> observed incidents of confrontation between Muslim and non-Muslim prisoners in these leisure and work areas over the noise level while the Muslim prisoners were praying.  The prayers of the Muslims are often 'vocal and lengthy,' which is disruptive of [Priddy's] leisure time activities.  As a Christian [Priddy] or any non-Christian should not have to be exposed to listen to Islamic doctrine, which is also disruptive.  A prison setting makes it very difficult to avoid unwelcomed religious activities that are held in a "formal manner"

in common areas that groups of prisoners must share.  (Compl. 13.) (emphasis in original). Priddy states that the loud prayers disrupt his reading and studying and occasionally cause him to alter his leisure activities or work routine to avoid any confrontation with the praying Muslims.

Priddy filed informal inmate complaints and grievances about the Muslim prayers being conducted in common areas, asserting that the prayers should fall under the policy governing formal religious activities.  Officials responded that the Muslim daily prayers were informal and did not require designation of a separate space or staff supervision.

Priddy asserts that since the Islamic faith requires adherents to pray five times per day, such prayers must be considered "formal religious activities."  He contends that officials' failure to apply the formal activities policy to bar Muslims from conducting their prayers in common areas constitutes an "endorsement" of the Muslim faith.  Priddy also characterizes the Muslim daily prayers as imposing on him an "unwelcome and unsolicited intrusion of religion," similar to a public display of religious symbolism that constitutes a governmental endorsement of a particular religion.  In these ways, Priddy asserts, prison officials have violated his rights under the Establishment Clause of the First Amendment to the United States Constitution.

---

[2]  Priddy names as defendants to this lawsuit the warden and operations manager at Bland and the VDOC regional director who addressed his grievance appeal.

## II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42 (1988).  In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted.  28 U.S.C. § 1915A(b)(1).

The Establishment Clause of the First Amendment forbids "excessive government entanglement with religion."  Lemon v. Kurtzman, 403 U.S. 602, 613 (1971).  The Establishment Clause guarantees, at a minimum, that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a State religion or religious faith, or tends to do so."  Lee v. Weisman, 505 U.S. 577, 587 (1992) (omitting internal quotations).  On the other hand, the Supreme Court has "long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause," so long as "the accommodation at issue . . . does not entangle the State in an unlawful fostering of religion."  Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 144-45 (1987).

The circumstances Priddy challenges simply do not describe a violation of the Establishment Clause.  The opportunity that Bland officials offer to Muslim inmates to conduct informal group prayers in the common areas is equally open to any inmate of any other religious

persuasion. Thus, this accommodation of Muslim inmates' beliefs does not constitute an improper endorsement of the Muslim faith over other religions. In addition, the practice of allowing the prayers does not require other inmates to alter their leisure activities or work routines any more than they would to accommodate other inmates' nonreligious activities in a limited space. Certainly, the prison policy does not coerce or even encourage non-Muslim inmates to participate in the Muslims' prayers. The court finds no respect in which Bland's practice of allowing Muslim prayers in inmate common areas violates Priddy's constitutional rights.

Priddy's claim that officials are misclassifying Muslim daily prayers as informal under VDOC policy is equally unavailing. Violations of state law by state officials do not provide an independent factual basis for a §1983 claim. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990).[3]

For the stated reasons, Priddy's allegations provide no factual basis for a plausible Establishment Clause claim. Therefore, the court dismisses Priddy's complaint without prejudice, pursuant to § 1915A(b)(1), as legally frivolous. As such, the court also denies Priddy's separate motion for preliminary injunctive relief. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 14th day of March, 2012.

                                                          /s/ Glen E. Conrad
                                                          Chief United States District Judg

---

[3] Because the court herein dismisses all of Priddy's federal claims, the court declines to exercise supplemental jurisdiction over any possible state law claims and dismisses them without prejudice. See 28 U.S.C. § 1367(c).